MANUEL CABRAL *vs.* PERRY'S EXPRESS CO., INC.

AUGUST 30, 1956.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

48

PAOLINO, J. This is an original petition for workmen's compensation under general laws 1938, chapter 300, as amended by public laws 1954, chap. 3297. It is here on the

respondent's appeal from a decree of the workmen's compensation commission.

The case was heard first before a single commissioner who entered a decree incorporating certain findings of fact and awarding compensation for total disability from December 6, 1954 until a suggested operation was performed and the compensation was terminated in accordance with the provisions of the workmen's compensation act. The decree also ordered that if within twenty days after the entry thereof the petitioner did not undergo said operation, then all compensation was to cease until the operation was performed. It also provided that respondent should pay all reasonable medical expenses incurred by petitioner to date and all reasonable hospital and medical expenses for the above-mentioned operation. This decree was appealed by respondent to the full commission which after consideration entered a decree on January 27, 1956, affirming the decree of the single commissioner and amending it only to provide that petitioner have the suggested operation performed within twenty days from the entry thereof. The instant appeal is from such decree.

Although respondent has filed twenty-nine reasons of appeal, it has briefed and argued its appeal mainly on the contention that the compensation award is not supported by legal evidence and therefore is contrary to law. In this respect it expressly contends: (1) There is no legal evidence that petitioner was at any time unable to do any kind of work. (2) There is no legal evidence of any incapacity prior to January 19, 1955. (3) There is no legal evidence that petitioner had any incapacity after March 1955. (4) There is no legal evidence that the disability found by Dr. Savastano in January 1955 resulted from the June 30, 1954 accident. (5) The commission should have suspended compensation payments on June 3, 1955, when respondent during the hearing offered to pay for the operation which had been recommended by Dr. Savastano.

In our judgment these contentions in substance raise two main issues for our determination, namely, whether there was legal evidence to support the findings of fact as to the extent of the incapacity and the causal relation between the incapacity and the injury, and whether the commission was warranted in refusing to suspend compensation payments upon the refusal of petitioner during the hearing to accept respondent's offer to pay the expenses for the operation recommended by the petitioner's doctor. Before we discuss those contentions, it may be helpful to briefly discuss some of the evidence pertinent to the points raised.

The petitioner testified that on June 30, 1954, while employed by respondent as a rigger in moving machinery and other heavy objects, he caught his left foot under the wheel of a fork-lift truck and was injured. He was paid three months' compensation from June 30, 1954, under a non-prejudicial agreement and returned to work for respondent about September 13, and continued to work until December 3, 1954. The petitioner also testified that, although he reported for work during this period, he was unable to earn his regular weekly wages because of the injury to his left foot; that he did not return to work for respondent after December 3, 1954 because his foot was getting worse; and that he was still limping and had performed no work of any kind since December 3, 1954. He stated his only work experience was as a rigger, a construction laborer and a truck driver's helper, and that his work as a rigger was done in a standing position.

The petitioner further testified that on July 13, 1954 the respondent sent him to Dr. John H. Gordon, an orthopedic specialist, who treated him once or twice a week until December 9, 1954; that he went back to work around September 13, 1954 because the doctor advised him to return to work and "try it out"; that this doctor had never discharged him but in early December 1954 he went to a Dr. Serbst because his office was closer to petitioner's home; and that

thereafter he had been going to Dr. Serbst twice a week. He also testified that since December 3, 1954 he could do no work because he could not stand on his foot; that he had suffered no other injury since June 30, 1954; and that the injury happened while he was working for respondent and "has been like that since."

The medical testimony is conflicting. Doctor Vincent J. Zecchino, who was respondent's witness, testified that he examined petitioner on March 18, 1955 in his office and also on June 3, 1955, during a recess at the hearing before the trial commissioner; that there was no doubt in his mind that petitioner had internal injuries to his foot, but there was no external evidence to denote that he had not fully recovered from the alleged injury which he sustained in June 1954; that as a result of his examination of June 3, 1954, he was of the opinion that petitioner was able to resume his former occupation as a rigger; and that he had the same opinion when he examined him on March 18, 1955.

Doctor Gordon was called as a witness by petitioner. He testified that he first treated petitioner on July 13, 1954 and that his injury was severe enough to cause him to refer petitioner to the Pawtucket Memorial Hospital for whirlpool treatments; that he treated petitioner at his office eleven times; and that the last office visit was on December 9, 1954. His diagnosis was that petitioner had a contusion of the left foot and strain of the left ankle, but he found no cyst in any of his examinations. In his opinion the injury was caused by the accident in question, and after his December 9, 1954 examination he felt petitioner was able to return to work. He expressed the same opinion after he examined petitioner during a recess at the hearing on June 3, 1955.

Doctor A. A. Savastano, an orthopedic specialist, testified that he had examined petitioner on January 19, 1955 and on March 18, 1955; that his diagnosis of the injury was that petitioner had a cystic formation of the dorsum of the

left foot which could cause considerable discomfort; and that in his opinion petitioner was totally disabled for work as a rigger as of March 18, 1955. He further testified that, based on the absence of any other injury either before or after the accident in question and on his findings of January 19, 1955, it was his opinion that petitioner's injury and total incapacity were due to the accident of June 30, 1954; that he recommended surgical removal of the cystic formation; and that if there were no complications after such operation petitioner could probably resume his regular work as a rigger in about four weeks. He also stated that petitioner was a suitable prospect for such an operation.

The issue thus resolves itself into whether such evidence is sufficient in law to establish a causal connection between the injury and the finding of total disability by the trial commissioner as affirmed by the decree of the full commission. The record discloses a mass of conflicting evidence relative to the main issues. It is clear from the decree of the commission that they believed the testimony of petitioner that he was unable to work as a rigger because of the injury, and that they also placed great weight on the testimony of Dr. Savastano both as to the total incapacity of petitioner and the causal relation thereof to his injury. Under the workmen's compensation act, G. L. 1938, chap. 300, as amended, questions of weight and credibility on conflicting evidence are not passed upon by this court. The findings of the workmen's compensation commission are, in the absence of fraud, conclusive if they are supported by legal evidence. P. L. 1954, chap. 3297, art. III, sec. 4. *Langanke* v. *Bradford Dyeing Ass'n,* 83 R. I. 470, 119 A.2d 728. After a careful reading of the transcript we are of the opinion that there is legal evidence which if believed supports either directly or by reasonable inference the findings of fact made by the trial commissioner and affirmed by the full commission.

It is not disputed that at the hearing before the trial com-

missioner Dr. Savastano recommended a surgical operation and respondent offered to pay for the same and for the necessary hospitalization, without prejudice to its position in the case. However, the petitioner was not willing to go into the hospital immediately due to a personal reason which has no connection with this case. The compensation awarded by the decree was conditional as stated above. The respondent contends that the commission erred in refusing to suspend compensation payments as of the date of its offer to pay for the same and the respondent's refusal to undergo the operation. The respondent further contends that the commission misapplied and misconceived the law as set forth in *Bishop* v. *Frank Morrow Co.*, 68 R. I. 518.

However, in the *Bishop* case, *supra*, this court did not hold, as respondent seems to argue, that an employee must unwillingly submit to an operation in any and all circumstances. Such question was not an issue in that case. The *Bishop* case decided that the evidence did not show that the employee's continuing disability was due to a willful or unreasonable refusal by him to have the hernia operation performed in the circumstances of that case and the appeal of respondent was denied and dismissed.

The trial commissioner observed in his decision that the respondent had denied liability to the very end and that its offer to pay for the operation was made in the "middle of the trial * * *." He then held that petitioner's refusal was not willful or unreasonable and therefore declined to suspend the compensation payments as requested by respondent. This was affirmed by the full commission. We are of the opinion that in the circumstances it was warranted in finding that petitioner's refusal was not willful or unreasonable. This is a finding of fact and will not be disturbed by this court if there is legal evidence to support it. There is such support in the evidence. The workmen's compensation act, P. L. 1954, chap. 3297, art. II, sec. 5 (a), requires the employer to provide reasonable medical and sur-

gical treatment and also provides that "the refusal of the employee to accept treatment reasonably required to lessen or terminate his incapacity shall bar the employee from receiving compensation during the period of refusal." However, the employee by refusing such services does not forfeit his right to compensation unless the refusal is unreasonable or willful. *Bishop* v. *Frank Morrow Co.*, 68 R. I. 518, 521. This being so, it is our opinion that the commission did not err in finding total incapacity and in applying the law relative to petitioner's refusal to undergo the surgical operation.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, except that the period of twenty days as provided therein shall begin to run from August 30, 1956, and the cause is remanded to the workmen's compensation commission for further proceedings in accordance with this opinion.

*S. Thomas Cotroneo,* for petitioner.

*Francis V. Reynolds, Richard P. McMahon,* for respondent.