CLARENCE VARIN *vs.* LYMANSVILLE COMPANY.
CLARENCE VARIN *vs.* LYMANSVILLE COMPANY.
CLARENCE VARIN *vs.* LYMANSVILLE COMPANY.

JUNE 23, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

464

PAOLINO, J. This is an employee's original petition for compensation and medical and hospital expenses which was filed on January 29, 1954 with the director of labor under the workmen's compensation act. After a hearing thereon in the office of the director of labor, a decision was entered on May 6, 1954 finding that the petitioner, on or about January 7, 1953, had sustained a ruptured intervertebral disc and ordering the payment of total disability compensation of $28 per week from October 20, 1953 and all reasonable medical and hospital expenses.

The respondent thereupon claimed an appeal to the superior court and on May 14, 1954 the case was transferred thereto for a hearing de novo. However, before any testimony was taken in that court, the case was transferred to the workmen's compensation commission under the provisions of public laws 1954, chapter 3297, Sec. 4. Thereafter the case was heard before a trial commissioner and a decree was entered which subsequently, on petitioner's appeal, was

affirmed by the full commission. He duly claimed an appeal to this court and while the appeal was pending here petitioner filed with the workmen's compensation commission two independent motions, in one of which he sought to vacate the decree entered by the commission, and in the other he requested the commission to quash the appeal from the decision of the director of labor. After a hearing by the commission, a decree denying the motion in each instance was entered. The cases are before us on petitioner's appeals from the three decrees of the commission.

The pertinent allegations of the petition are that on January 7, 1953 petitioner was in the employ of respondent as a supervisor in the wet finish department; that while pulling a hand truck he was struck by a board which fell off the truck causing him to fall backwards; and that he sustained an injury to his back and a ruptured intervertebral disc.

It appears from the evidence that petitioner worked on the 11 p.m. to 7 a.m. shift; that the accident which caused the alleged injuries occurred at 3 a.m. on January 8, 1953; that he consulted Dr. Raymond F. McAteer on January 13, 1953 complaining of severe pain in his back; and that according to the doctor's report he was able to resume regular work on January 15, 1953. The evidence further shows that on January 16, 1953 he was referred by respondent to Dr. Vincent Zecchino, an orthopedic specialist; that after a complete examination, the doctor concluded that petitioner was suffering from residuals of a low back strain, which he defined as a lumbosacral strain probably on a muscular basis; that petitioner was able to continue his work, but should avoid lifting for a couple of weeks; and that Dr. Zecchino saw him on January 21, 1953 and again on January 26 when, after finding that there was no spasm of the back and that his spinal motions were normal, petitioner was discharged.

According to the record, petitioner worked continuously

from January 26, 1953 until he was laid off on October 20, 1953. However, he testified that on January 18 or 19, 1953, because of his injury he was transferred to the 7 a.m. to 3 p.m. shift as an assistant to the second hand and was told he was to do no work; that after such transfer he had it very easy until the plant closed for the summer vacation in July 1953; that he was put on harder work when he returned from vacation; that thereafter the pain got worse; and that although there was plenty of work in his department he was the only man laid off on October 20, 1953.

On the other hand, witnesses for respondent testified in substance that petitioner was transferred to another shift because the work on his former shift was not satisfactory and he was not getting along with his fellow workers; that petitioner's testimony that he did no work from January to July 1953 was untrue and his work after July was the same as from January to July 1953; that he was laid off because of lack of work; and that over five hundred employees were laid off during the month of October 1953. The petitioner's immediate superior testified that petitioner had never complained to him about his back.

On this state of the record the commission found that the transfer of petitioner from the third to the first shift was not made because of his injury, but to improve certain operations in the plant with which respondent was having considerable trouble; that petitioner was not discriminated against but was laid off because of a general layoff; and that he had not proved any loss of earnings from the date of the accident through October 20, 1953. It is clear that such findings are supported by the evidence and, no claim of fraud being present, are conclusive and binding upon this court under our act. *Cabral* v. *Perry's Express Co.*, 85 R. I. 47, 125 A.2d 221. General laws 1938, chap. 300, art. III, as amended.

Thereafter the commission entered a decree affirming the decree of the trial commissioner containing findings of fact

to the effect that the injury sustained by petitioner was a low back strain, or a strain of the muscles and ligaments in the lumbosacral area; that petitioner did not prove any loss of earnings from January 26 through October 20, 1953; that he was totally disabled from October 26 to December 23, 1953 inclusive, and from May 20, 1954 to July 7, 1954 inclusive; that he may have been partially disabled on occasions other than the above periods, but that proof of the extent and amount of his loss of earning capacity due to such disability was not adequate to determine the same; and that he was not disabled as of November 10, 1954. The respondent was also ordered to pay the reasonable medical and hospital bills of petitioner.

We shall consider petitioner's contention that the commission erred in finding he did not prove that he probably had a ruptured intervertebral disc. It appears from the evidence that he visited Dr. McAteer on the evening of the day he was laid off, October 20, 1953, and again on October 26, 1953 when the doctor referred him to Dr. William V. Hindle, an orthopedic surgeon; that Dr. Hindle examined him on October 28 and recommended a myelogram; that on November 30, 1953 he entered St. Joseph's Hospital and a myelogram was performed; and that he left the hospital on December 3, 1953 and was under Dr. Hindle's care until October 19, 1954.

The petitioner's hospital record was in evidence. It contained the report of Dr. Paul J. Votta, a roentgenologist, who performed the myelogram on December 1, 1953 and interpreted the X rays. His report concluded that the findings suggested the *possibility* of a ruptured intervertebral disc. Doctor Hindle, who testified for petitioner, stated that the X rays indicated a ruptured disc; that he diagnosed the case as a ruptured disc with no muscle strain, sacroiliac strain, or any other low back condition entering into it; that he recommended a laminectomy; that petitioner as of the time of the hearing before the workmen's

compensation commission would not be able to resume the type of work he had been doing; and that he based his findings on the results of the X rays and on the knowledge he had acquired by having treated petitioner for over a year.

Doctor Vincent Zecchino and Dr. Ernest D. Thompson, orthopedic surgeons, were called as witnesses by respondent. Based on their reading of Dr. Votta's report, they testified in substance that the results of the myelogram and the protein test did not indicate a ruptured intervertebral disc. Doctor Zecchino testified that petitioner was suffering from the residuals of a low back strain, a "lumbosacral strain probably on a muscular basis, a ligamentous basis." Doctor Thompson, who examined petitioner on November 5, 1954, testified that he found no evidence of any disc disturbance. Doctor McAteer's report, dated January 27, 1953, states that petitioner was able to resume regular work on January 15, 1953.

On the basis of the conflicting opinions of the medical experts, the commission concluded that the weight of the medical evidence did not establish that petitioner probably had a ruptured intervertebral disc, and accordingly the decree contained the finding that the injury was a low back strain as described therein. On this issue the commission gave more weight to the testimony of respondent's medical experts than to petitioner's experts. This evidence is competent and therefore sufficient to sustain the finding of the commission as to the nature of the injury and such finding cannot be disturbed by this court on the record before us. *Cabral* v. *Perry's Express Co., supra.*

The petitioner next contends that the commission erred in finding that he was only disabled for the two periods of time set forth in the decree. This contention is based on paragraph 4 of the decree which reads as follows: "That the petitioner may have been partially disabled on other occasions other than the above periods but that proof of the extent and amount of his loss of earning capacity due

to such disability was not adequate to determine the same." Said paragraph was based on the finding of the trial commissioner, as affirmed by the commission, that "It may well be that the Petitioner was disabled on other occasions, but, in my opinion, he was only partially disabled, at best, and there is no evidence before me upon which I could make a finding of diminution of earnings."

We are satisfied that the evidence supports the award of total compensation for the two periods for which it was awarded as well as the finding that petitioner was not disabled as of November 10, 1954. However, petitioner contends that such award could only be based upon the testimony of petitioner and/or Dr. Hindle, and therefore, because of the language used by the commission in paragraph 4 of the decree, the instant case is governed by *Catoia* v. *Eastern Concrete Products Co.*, 84 R. I. 402, 124 A.2d 864, and should therefore be sent back to the workmen's compensation commission for rehearing and a finding as to the extent of petitioner's diminished earning capacity.

In the *Catoia* case the commission, after having rejected the testimony of the employer's medical experts as to the duration of the employee's total incapacity, attempted to use the same testimony to sustain their finding that the employee there had no partial incapacity on and after a certain date. We said they erred in so doing. In the instant case the commission, although they gave no weight to the testimony of Dr. Hindle with respect to his diagnosis of the injury, apparently gave some weight to his testimony insofar as it related to the duration of total incapacity during the two periods above mentioned. We see no inconsistency on the part of the commission in so doing, since petitioner could have been totally incapacitated during those periods for an injury other than that diagnosed by Dr. Hindle. Moreover it seems to us that petitioner's instant contention is based on his interpretation that paragraph 4 in effect amounts to a finding of partial incapacity.

If this interpretation is correct, the principle of the *Catoia* case would apply. However, after carefully reading said paragraph in the context of the entire decree, it is our opinion that the commission did not make, and in fact did not intend to make, a finding of partial incapacity. For these reasons the *Catoia* case does not apply to the facts of the instant case and in our opinion the decree therein is not erroneous in finding that petitioner was only disabled during those two periods.

The appeals from the decrees denying petitioner's motions to vacate the decree in the case numbered Equity No. 2393 and to quash the appeal from the director of labor's decision in the same case are based on petitioner's contention that the trial commissioner did not have jurisdiction to hear the case de novo. He contends that under the provision of chap. 3297, Sec. 4, upon the transfer of the case from the superior court to the workmen's compensation commission the appeal from the decision of the department of labor should have been heard by the full commission sitting in its appellate capacity. The pertinent provisions of P. L. 1954, chap. 3297, Sec. 4, provide: "All workmen's compensation cases pending in the superior court on July 1, 1954 wherein no testimony has been received shall be forthwith transferred to the clerk of the workmen's compensation commission for determination by said commission."

We do not agree with petitioner's contention. It is our opinion that in enacting chap. 3297, which created the workmen's compensation commission, the legislature intended to establish a separate department in the state government in order to provide judicial hearings to persons coming before it. Section 3 (b) of art. III provides: "There shall be established in the state of Rhode Island a workmen's compensation commission having such jurisdiction as may be necessary to carry out the provisions of the workmen's compensation act. Said commission shall be a com-

mission of record with the same rights of subpoena and also the same rights to cite and punish for contempt as exist in the superior court, having a seal, and the members or clerk of which shall have power to administer oaths and affirmations." In addition, qualification for membership in the commission is restricted to attorneys at law and within the limits of the jurisdiction granted to it by the legislature the commission is a court of law in all but name. See *Brown & Sharpe Mfg. Co.* v. *Lavoie,* 83 R. I. 335, 340.

This was not so before the enactment of chap. 3297. The hearing officers in the department of labor were administrative officers whose decisions were not reviewed upon appeal to the superior court. Under the old law the petitions, upon appeal, were heard de novo in that court. Public laws 1954, chap. 3297, art. III, sec. 3 (d), provides in part: "All cases coming before the commission shall be heard and decided by any member thereof"; and sec. 3 (g) provides: "Any person aggrieved by the entry of a decree by a commissioner may appeal to the full commission" and that "The full commission shall forthwith review the decree upon the record of the case * * *."

The law prior to the effective date of chapter 3297 did not provide for the entry of decrees by the department of labor, nor were the hearings matters of record subject to review, as such, on appeal to the superior court. Therefore it is our opinion that the trial commissioner had jurisdiction to hear de novo the appeal from the director of labor's decision in the case numbered Equity No. 2393, and that the full commission did not err in denying the petitioner's motion to vacate the decree and also his motion to quash the appeal from the director of labor's decision in that case.

The petitioner's appeals are denied and dismissed, the decrees appealed from are affirmed, and the causes are re-

manded to the workmen's compensation commission for further proceedings in accordance with this opinion.

*Edward I. Friedman, Vincent J. Chisholm, Sidney Wexler,* for petitioner.

*Boss, Conlan, Keenan, Bulman & Rice, Francis W. Conlan,* for respondent.